# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ROBERT MITCHOM, | ) |
| | ) |
| Plaintiff, | ) NO. 3:08-1224 |
| | ) JUDGE HAYNES |
| v. | ) |
| | ) |
| HCA MANAGEMENT SERVICES, L.P., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

Plaintiff, Robert Mitchom, filed this action under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et seq., against the Defendant HCA Management Services, L.P., ("HCA-MS"). Plaintiff asserts a claim of racial discrimination in the Defendant's administration of its reduction in force at its Nashville office.

Before the Court is the Defendant's motion for summary judgment (Docket Entry No. 22), contending, in sum, that its reduction in force was racially neutral, that African American and White employees were retained based upon uniformly-applied standards; that the reduction in force resulted in termination of African American and White employees, and that Plaintiff lacks any proof that the Defendant's decisions were racially motivated. The Court granted the Plaintiff an extension of time to file a response (Docket Entry No. 27), but Plaintiff has not done so.

For the reasons set forth below, the Court concludes that the Defendant's motion for summary judgment (Docket Entry No. 22) should be granted for the lack of any proof of racial discrimination.

## A. Findings of Fact[1]

HCA-MS maintains the computer systems and stores electronic data for the clinical operations at HCA's hospitals. HCA-MS operates eight facilities called "Regional Data Centers," ("RDCs") that includes its Nashville location. (Docket Entry No. 24, Hayes Declaration at ¶ 2). Prior to its reduction in force in November 2006, the Nashville RDC employed 16 full and part-time employees, id. at ¶ 3, with eight full-time employees, excluding management.

Plaintiff began work at the Nashville RDC in April 2002 as a part-time computer operator, but in December 2002, Plaintiff accepted a full-time position as a production analyst. Plaintiff's job duties included inserting tapes into and removing tapes from computer servers, monitoring data backups, printing, and answering the telephone. (Docket Entry No. 23-1, Mitchom Deposition at pp. 32-33).

In early 2005, HCA-MS upgraded its technology for its RDCs' operations. (Docket Entry No. 24, Hayes Declaration at ¶ 17. Prior to this upgrade, the RDCs used a large array of tape drives attached to servers to back up the data for HCA's clinical operations. Id. RDC employees spent the majority of their time removing and inserting data tapes drives on each server. Id. at ¶ 6. The key to this upgrade was replacement of the large array of tape drives that backed up the

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). The Court concludes that there are not any material factual disputes. Thus, this section constitutes finding of facts under Fed.R.Civ.P. 56(d).

servers. Id. at ¶ 8. The Defendant selected a single machine, a "silo," that hold up to 5,000 individual data backup tapes. Id. All tapes can now be loaded and unloaded at one time and the "silo" can hold considerably more data thereby reducing the number of necessary employees at each RDC. Id. The Defendant determined that employees with greater information technology ("IT") expertise to troubleshoot any computer issues, in addition to monitoring data back-ups would be retained. Id. at ¶ 10. HCA-MS concluded that 10 skilled employees could operate the Nashville RDC as well as any new computer troubleshooting/repair duties. Id. at ¶ 12.

To identify employees with the skills, aptitude, and attitude necessary to handle the new troubleshooting and repair duties, HCA-MS developed a standard 10-criteria evaluation form to evaluate the employees at each of its RDCs, namely: (1) attitude; (2) adaptability; (3) flexibility; (4) growth capability; (5) education; (6) the ability to be a team player; (7) the ability to teach and mentor; (8) the ability to think creatively; (9) technical abilities; and (10) work ethic. An evaluation form explained each criterion to guide the manager at each RDC in applying the standards. Each employee was evaluated on a scale of 1 to 5 in each category, with 1 the lowest score and 5 the highest for a total of 50 "points." Id. at ¶ 13 and Exhibit A thereto. The same formula was applied to each employee. Id. at ¶¶ 17 and 18. The actual layoffs occurred after the technology upgrade was completed. Id. at ¶ 15.

The Nashville RDC was the last to complete the technology upgrade and the last to implement its layoffs. Id. Of the employees at the Nashville RDC, 10 scored above 30 points and six employees scored below 30. The six employees who scored below 30 were laid off,

namely: Plaintiff,[2] an African American with a score of 29; Margaret Harrison (White) with a score of 20; William Lockridge (African American) with a score of 27; (4) Philip Marsh (White) with a score of 27; (5) Ronald McCord (African American) with a score of 29; and (6) Ethan Toombs (White) with a score of 25. Id. at ¶ 16 and Exhibit A thereto.

On November 15, 2006, each of these employees was informed that he or she was being laid off and was provided with severance pay based on each employee's years of service.

Here, Plaintiff's principal contention is that based on his criteria, the layoffs should have been based on seniority and "experience." (Docket Entry No. 23-1, Mitchom Deposition at pp. 39, 136). Plaintiff does cite Shawn Emily, a White IT specialist, but Emily has a college degree, and Plaintiff does not. Education was one of the 10 factors HCA-MS used to make its retention decisions. Emily has more leadership experience that Plaintiff with her work as a team leader prior to joining HCA-MS. Leadership experience was important to the new job duties employees at the Nashville RDC, and was among the selection criteria, including the ability to teach and mentor," and "the ability to be a team player." Plaintiff's opinion is that Emily was "useless."

### B. Conclusions of Law

To establish a prima facie case of race discrimination under Title VII for a reduction in force claim, Plaintiff must prove: (1) that he was in a protected class; (2) that he was terminated; (3) that he was qualified for the job; and (4) additional direct, circumstantial or statistical evidence tending to show that his race was the actual basis for his layoff. Mynatt v. Lockheed Maring Energy Sys.Inc., 271 Fed. Appx. 470, 477 (6th Cir. 2008); Rowan v. Lockheed Martin

---

[2] After the layoff, Plaintiff's position was filled with a part-time African American employee. (Docket Entry No. 23-1, Mitchom Deposition at p. 135-36).

4

Energy Sys., Inc., 360 F.3d, 544, 547 (6th Cir. 2004.

A Title VII plaintiff challenging a termination as discriminatory must also establish that "a similarly situated person who was not in the protected class received the job." See e.g., Barnes v. GenCorp., Inc., 896 F.2d 1457, 1465 (6th Cir. 1990). To be similarly situated, "the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the relevant aspects,'" i.e., their circumstances must be "nearly identical." Noble v. Brinker Int'l, Inc., 391 F.3d 715, 729 (6th Cir. 2004) (quoting in part Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 357 (6th Cir. 1988). For RIF claims, the Sixth Circuit modified this fourth element cases because "[w]hen an employer is forced to reduce its staff for economic reasons, the most common legitimate reason for the discharge is the RIF itself." Mynatt, 271 Fed. Appx. at 477.

Here, Plaintiff's principal contention is that based upon his criteria, the layoffs should have been based on seniority and experience. (Docket Entry No. 23-1, Mitchom Deposition at pp. 39, 136). As a matter of law, a Title VII plaintiff's contention that he was better qualified than the workers who were retained, is insufficient to establish a prima facie showing. Mynatt, 271 Fed. Appx. at 474. In a word, "[i]t is the manager's motivation that is the key factor, not the employee's perception." Shapira v. Lockheed Martin Corp., 88 F.Supp.2d 813, 824-25 (E.D. Tenn. 1998). Thus, Plaintiff's opinion about who should be laid-off is not probative. Moreover, Plaintiff fails to present any evidence that he was singled out for layoff based on his race.

Plaintiff's opinion about Emily is not probative. See Wrenn v. Gould, 808 F.2d 493, 502 (6th Cir. 1987) (plaintiff's "perception of his competence, and the incompetence of those competing against him, is irrelevant."). In addition, Plaintiff's assessment of Emily's abilities are

based upon past performance. The Defendant's decision was prospective, in selecting the employees with the perceived appropriate skills, aptitude, and attitude to operate the RDC effectively after the new technology was implemented. Plaintiff never challenges these criteria for the Defendant's reduction in force.

Even assuming Plaintiff's proof could establish a prima facie case of race discrimination, HCA-MS has articulated a "legitimate, nondiscriminatory reason" for its decision to layoff Plaintiff. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Plaintiff bears the burden to prove that HCA-MS's stated reason for his layoff is a pretext for racial discrimination. Id. at 804. To do so, Plaintiff must prove: (1) that the stated reasons lacks a factual basis; (2) that the stated reasons did not actually motivate his layoff; (3) that the stated reasons could not justify his layoff. Id. (quoting Manzer v. Diamond Shamrock Chems., 29 F.3d 1078, 1084 (6th Cir. 1994). "[I]t is not enough ... to disbelieve the employer, the fact finder must believe [Plaintiff's] explanation of intentional discrimination." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 519 (1993). The "mere fact that [Plaintiff] is African American is not enough to establish that he was someone targeted for termination." Lucent Tech., 236 226 Fed. Appx. at 591-92.

Plaintiff fails to present any evidence that the Defendant's layoff decisions were motivated by anything other than management's stated reasons. The employees laid off at the Nashville RDC include three African American employees, and three White employees. In sum, the "abundant and uncontroverted evidence" demonstrates "that no discrimination ... occurred." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000).

Thus, the Defendant's motion for summary judgment (Docket Entry No.22) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the _____ day of November, 2009.

WILLIAM J. HAYNES, JR.
United States District Judge